**In re the Marriage of John D. MEYER, petitioner, Appellant,**

**v.**

**Margery E. MEYER, Respondent.**

**No. C7-88-2183.**

Court of Appeals of Minnesota.

June 13, 1989.

Review Denied Aug. 15, 1989.

Larry M. Nord, Duluth, for petitioner, appellant.

John G. Fillenworth, Eckman & Fillenworth, Ltd., Duluth, for respondent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and SCHULTZ, JJ.*

## OPINION

FOLEY, Judge.

John D. Meyer appeals from the order denying his motion for modification of a spousal maintenance award. We affirm in part, reverse in part and remand.

## FACTS

The marriage of John and respondent Margery E. Meyer was dissolved by judgment and decree entered December 31, 1984. At the time the marriage was dissolved, John's net monthly income was $1,310. Margery had a limited income. The trial court initially awarded child support of $327 per month and spousal maintenance to Margery of $800 per month, for a total monthly obligation of $1,127. On appeal, this court determined that John had no demonstrable ability to pay the maintenance awarded. We reversed the trial court's award of spousal maintenance in October 1985 and remanded the case for a determination of the proper amount of maintenance to be awarded. *See Meyer v. Meyer,* 375 N.W.2d 820 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Dec. 30, 1985).

By reason of the fact that there were procedural delays and requests for recusal, the remanded issues were not heard until

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

December 21, 1987. Since the dissolution, Margery had obtained employment, and at that time John filed a motion for modification of the maintenance award and forgiveness of arrearages.

The trial court issued an order on January 14, 1988, determining there was no evidence that John had any additional income. The trial court modified the maintenance award to $500 per month, made retroactive to December 31, 1984. The court also refused to consider John's motion on the basis that no motion with respect to a modification could be made until the court had entered its order. There was no appeal from the order awarding maintenance of $500 per month.

After the order was entered, John filed a new motion for modification and forgiveness of arrearages. That motion also challenged the constitutionality of the 1987 amendment to Minn.Stat. § 518.64, subd. 2, which had been enacted during the time this matter was pending on remand. At the hearing on that motion held August 4, 1988, the parties stipulated that the issues to be presented were limited to whether a current modification in maintenance would be appropriate. The other issues raised by the motion were to be held in abeyance pending this court's ruling.

The parties further agreed that John's circumstances had not changed and that his expenses and income had remained the same. The trial court's findings reflect that John "has been able to maintain a standard of living similar to that established during the parties' marriage, which included an expensive home, foreign automobiles, hunting trips, vacations and entertaining."

Margery testified that she was working seven and one-half hours per day, five days per week, with a salary of $6.50 per hour. She further testified that her employer does not offer medical insurance or pension benefits and that she has no paid sick days. She stated that she does not have money to purchase or maintain an automobile and that she has no income from a contract for deed awarded to her as part of the marital property division.

The trial court found there had been no substantial change in John's financial circumstances since December 1984. The court also found that while the dissolution decree contemplated that Margery would acquire training to become self-supporting, she has been prevented from doing so largely because of John's failure to pay maintenance. The findings also indicate that Margery has a debt of $7,653 to her parents and that her reasonable living expenses are $1,788 per month, which includes $400 per month for maintaining a car. The court found no substantial change in Margery's needs or financial circumstances which would render John's obligation to pay $500 per month unreasonable and unfair.

The court denied John's motion for forgiveness, and it did not reach the question of the constitutionality of the 1987 amendment to Minn.Stat. § 518.64, subd. 2. The court also denied Margery's motion to hold John in contempt for nonpayment of maintenance and denied her request for attorney fees for bringing that motion. Margery was awarded a judgment for accrued maintenance in the amount of $21,472.10.

## ISSUES

1. Did the trial court err in denying John's motion for modification of the spousal maintenance award?

2. Did the trial court err in relying on materials submitted after the hearing on the motion for modification?

3. Did the trial court abuse its discretion in denying Margery's motion for attorney fees and costs for bringing the motion to hold John in contempt for failure to pay maintenance?

4. Should appellate costs and attorney fees be awarded to Margery?

## ANALYSIS

1. The trial court has broad discretion in determining matters relating to maintenance. This court will not find an abuse of discretion unless the trial court's determination is based on a clearly erroneous conclusion that is against logic and the

facts on record. *Sand v. Sand,* 379 N.W. 2d 119, 120 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Jan. 31, 1986). Furthermore, a maintenance award is to be modified only upon clear proof of a substantial change in circumstances from the time of the divorce. *Id.* at 120–121.

■ The party seeking modification of a maintenance award must show that the award is unreasonable and unfair due to one of the following factors:

(1) substantially increased or decreased earnings of a party;

(2) substantially increased or decreased need of a party;

(3) receipt of assistance under sections 256.72 to 256.87; or

(4) a change in the cost-of-living for either party as measured by the federal bureau of statistics * * *. On a motion for modification of maintenance, the court shall apply, in addition to all other relevant factors, the factors for an award of maintenance under section 518.-552 that exist at the time of the motion.

Minn.Stat. § 518.64, subd. 2 (1988).

John argues that the trial court abused its discretion in concluding there was no substantial change in circumstances making the original award unfair.

The parties stipulated at the hearing that John's circumstances had not changed and his expenses and income were the same as at the time of the original judgment. The findings show that his expenses are $1,900 per month and his net income is $1,310 per month. Margery's net earnings were $3,367 in 1985; $3,550 in 1986; $6,500 in 1987; and $5,488 through July 1988. Her average income for 1988 was approximately $800 per month.

Margery had a limited income at the time of the dissolution and now is employed on a full-time basis. There has been an increase in her income since the time of the original award; however, the trial court found that this amount was not enough to meet her reasonable monthly living expenses. John contends that the court should have considered this change in her income a substantial change in circumstances.

■ In *Tuthill v. Tuthill,* 399 N.W.2d 230 (Minn.Ct.App.1987), this court upheld the denial of a modification in maintenance stating:

Appellant argues that because respondent is now employed, circumstances have changed, making the original maintenance provisions unfair and unreasonable. However, the amount of maintenance clearly indicates that it was presumed respondent would have a source of income in addition to the $500 per month she will receive through 1988 and the $350 per month to be paid during the following five years.

*Id.* at 232. Here, the court knew that Margery had some limited income at the time of the original award but felt that she would need maintenance for a period of five years. The fact that Margery is now employed is not by itself a substantial change in circumstances rendering the award unfair.

Margery is an older, dependent spouse of a lengthy traditional marriage who suffers from a mental illness. She was a homemaker during much of the marriage and is unable to withstand stress. The trial court's findings indicate that the court took those factors into consideration.

Although Margery's income has increased since the dissolution, the trial court was correct in determining these circumstances were not a substantial change rendering the maintenance award unfair.

■ 2. John next argues that the trial court improperly based its finding regarding Margery's automobile expenses on an affidavit submitted after the hearing. Any error here by the trial court in relying on that affidavit is harmless error. The totality of the circumstances justifies affirming the decision.

3. Margery's notice of review seeks review of the September 1988 order denying her motion for attorney fees and costs for bringing the motion to hold John in contempt for nonpayment of maintenance.

■ The trial court denied the motion to find John in contempt of court. Although

ordinarily the decision to award attorney fees rests in the discretion of the trial court, we reverse in view of the disastrous financial circumstances in which Margery finds herself and direct the trial court to reconsider her request for attorney fees on remand.

Further we observe that the facts in the record in this case lead us again to reiterate observations about the existing practice of billable hours in family law matters. *See Sinsabaugh v. Heinerscheid,* 428 N.W. 2d 476, 481 (Minn.Ct.App.1988) (Foley, J., concurring specially). This case is yet another striking example of the escalating cost of attorney fees in family law matters. We cannot be blind to a system that is wrong and must be changed.

The facts here are undisputed. Here is a lady who barely meets the poverty line level and yet has incurred attorney fees in excess of $15,000. Margery's net earnings in 1985 were $3,367; $3,550 in 1986; $6,500 in 1987; and $5,488 through July 1988. In addition to her earnings, she has accepted assistance from the following sources to help provide basic living necessities:

* Family Services in the Ordean Building provided some medical/dental care for Margery and Ross, her minor son;

* Damiano Center;

* HDC has not billed for their services since her medical insurance was terminated;

* Free Clinic;

* St. Benedict's Catholic Church provided food baskets at Christmas and Thanksgiving;

* On partial AFDC income for three months, which included a Medical Assistance card;

* One Saturday a month she walks one mile to and from the Armory to receive Government Surplus food;

* As a rule, she walks to and from work to save the $22.50 cost of a bus pass in order to have some extra spending money;

* Ross has free/reduced lunches at school;

* Ross has free/reduced daycare through the County;

* Margery has qualified for fuel assistance.

It does not ennoble a great profession to perpetuate a fee system that places upon the backs of ordinary wage earners and people of modest means the burden of oppressive debt. Family law is intended to be within the reach of all who need its protection, but when a fee system places such a heavy debt of thousands upon thousands of dollars, requiring an ordinary wage earner to carry that debt of attorney fees for several years, the system is wrong and must be corrected. Expensive attorney fees in family law matters have become the rule and not the exception.

In this sensitive and so often traumatic area of the law, we have a firmly committed view that the profession has an affirmative duty to provide quality legal services within the ability of the litigant to pay. The bar association should make a concerted effort to accomplish this goal. It is to be hoped that the task force now being established by the State Bar Association will provide a meaningful solution to this urgent concern.

However, if the economics of law office management cannot accommodate a dramatic and substantial change in the charging of fees for these services, then we suggest the whole structure of the statutory law in dispositions of family law disputes will have to be realistically examined in order to relieve the economic burden now borne by those of modest means and some, as here, at the poverty level, and still see a resolution of those disputes which cause so much pain to the family. One alternative could be the removal of this area of the law from the adversarial system.

It is imperative that an alternative system to the fixing of fees in family law matters be found, and soon.

■ 4. Margery also seeks appellate attorney fees and costs. Based on the circumstances of this case, we award appellate attorney fees of $500.

## DECISION

We affirm the trial court's denial of the motion for modification of the spousal maintenance award. We reverse and remand for the trial court to reconsider the respondent Margery's request for attorney fees and to rule on the constitutional question held in abeyance pending the ruling on the modification.

Affirmed in part, reversed in part and remanded.